IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JASON J. McDONNELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: 1:06-cv-447-WKW |
| | ) |
| LAMAR GLOVER, et al., | ) |
| | ) |
| Defendants. | ) |

### AFFIDAVIT

STATE OF ALABAMA,

HOUSTON COUNTY.

Before me, the undersigned authority for administering oaths, personally appeared **Lieutenant Kristin E. Rocco** of the Houston County Sheriff's Department, who is the Jail Administrator for the Houston County Sheriff, Houston County, Alabama, who being by me first duly sworn, deposes and says as follows:

I am Lieutenant Kristin E. Rocco and I am the Jail Administrator of the Houston County Jail, Houston County, Alabama. I have been employed by the Houston County Sheriff since 1997 serving as a deputy sheriff and now as the jail administrator since February 6, 2006. Commander McCarty is the Commander for Jail Operations. My principal duties involve the administration of the Houston County Jail. Unless otherwise indicated herein, I have personal knowledge of the facts

KRISTIN E. ROCCO AFFIDAVIT                                                                 PAGE 1



and information contained herein. I make this affidavit after review of the plaintiff's jail inmate file and the subject matter of plaintiff's Complaint in an attempt to address plaintiff's claims in this case.

The Houston County Jail, as a part of the Inmate Rules and Regulations, provides for an inmate Grievance Procedure. The plaintiff has filed one grievance that did not in any way relate to the matters in this case.

A true and correct copy as kept in the ordinary course of the operation of the Houston County Jail of the Inmate Rules of the Houston County Jail which contain the inmate instructions on filing a grievance are attached hereto as **Exhibit A** and are incorporated herein by reference as if fully set forth. A true and correct copy as kept in the ordinary course of the operation of the Houston County Jail of Policy Number E-301 of the Houston County Jail Policy and Procedure Directive relating to Inmate Rules and Regulations is attached hereto as **Exhibit B** and is incorporated herein by reference as if fully set forth. A true and correct copy as kept in the ordinary course of the operation of the Houston County Jail of Policy Number E-302 of the Houston County Jail Policy and Procedure Directive relating to Receipt of Inmate Rules and Regulations is attached hereto as **Exhibit C** and is incorporated herein by reference as if fully set forth. A true and correct copy as kept in the ordinary course of the operation of the Houston County Jail of the plaintiff's Jail Docket Cards showing that the plaintiff received a copy of the Inmate Rules are attached hereto as **Exhibit D,** and are incorporated herein by reference as if fully set forth. A true and correct copy as kept in the ordinary course of the operation of the Houston County Jail of an Inmate Grievance Form available to and as provided to inmates is attached hereto as **Exhibit E**, and is incorporated herein by reference as if fully set forth. A true and correct copy as kept in the ordinary course of the operation of the Houston

County Jail of Policy Number E-401 of the Houston County Jail Policy and Procedure Directive relating to Inmate Grievances is attached hereto as **Exhibit F** and is incorporated herein by reference as if fully set forth.

I have investigated the plaintiff's complaints in this lawsuit and have found them to be without basis. Based on my investigation of the plaintiff's claims, Commander McCarty who is also sued by the plaintiff in this case knows basically the same information provided in this affidavit and an affidavit from the Commander would be repetitious of the information contained herein.

Houston County, Alabama, built a new jail that was first occupied in the spring of 2002. In addition to the corrections officers working in the pods, the Houston County Jail has video surveillance throughout the inmate pods and inmate housing areas monitored by officers assigned to work in the jail's central control room ("central control"). In addition the Jail is staffed with two officers within each control room in each pod area and they, in coordination with "central control" officers, also have video surveillance of the pods in the area in which they work. One wall of each pod consists primarily of glass to allow visual observation of inmates. The control rooms are situated in the center of the pod area with windows on all sides allowing corrections officers to observe inmates within the pods. In addition to the two officers assigned to the control room of each pod area, there are "rover" corrections officers assigned to rover stations throughout the jail to assist the officers in the pod areas should they need assistance with disciplinary problems or the transport of inmates. The Jail also has back up procedures for corrections officers in the event of an outbreak of violence within any given pod and provides immediate communication by radio between correction's officers on duty in addition to the telephone intercom system.

The Jail has strict procedures to insure that inmates do not have access to weapons within the Jail. The procedures include the searching of inmates not only by the officer who brings the inmate into the jail but also by the docket officer booking the inmate. Inmates also have all their personal property removed, are required to shower and to dress at all times in their jail issued jump suits which are designed to prohibit the concealment of weapons. Also, inmates are searched each time they are transported to and from court or any other destination.

The Jail also has strict procedures to locate and remove contraband that may otherwise find its way into the jail, including but not limited to, weapons of any type or items that could be altered to make a weapon. Every day random shake down searches of pods are done to locate and confiscate contraband in the jail. In addition to constant visual surveillance of inmates by the officers within the pod control rooms, during each shift there are several walk through inspections of the pod areas with visual inspections made of the cells by corrections officers and by the shift sergeants on duty.

There are procedures for and inmates are in fact disciplined for violations of jail inmate rules and regulations. The discipline imposed, includes but is not limited to, loss of privileges for minor offenses and segregation of inmates for serious offenses such as escape attempts, being caught with anything that is altered to be used as a weapon, realistic threats directed to corrections officers, threats of violence to other inmates, destruction of jail property, fighting, being caught with a weapon and assaults on other inmates. Appropriate criminal charges may also be filed against the offending inmate.

The jail also makes provision for inmates to maintain an "enemies" list with the jail staff where the inmate can assist the staff in providing for the inmates physical safety. In addition, inmates

are classified for housing according to the severity of offense and in such a way as to best segregate nonviolent inmates from violent inmates. Also, if any inmate fears for their safety, they may by inmate request form, request to be placed in administrative segregation for their own safety.

Except for attorney visits (with attorney's being subject to search) and other exceptional circumstances, inmates are not permitted contact visits but rather all visitation is conducted through glass partitions.

With regard to the specific factual situation made the basis of the plaintiff's claims in this case, the gun that was found within a jail mattress was located and confiscated within approximately six hours of its being smuggled into the jail. The plaintiff was never in any danger as he was not housed in the same pod where the mattress with the gun was found and confiscated. As a result of this situation and because security and safety within the jail are so important, the jail booking procedures were reviewed to see if any procedural weakness could be found. As a result of that review, the jail changed its search procedures to require a search of all inmates brought into the jail by the officer bringing the inmate to the jail but also an independent search of all inmates by the docketing officer who books the inmate into the jail before the jail takes custody of the inmate and before the arresting officer is permitted to leave the jail. In addition to the officers assigned to work there, the docketing area of the jail is also under visual video surveillance by corrections officers in the jail's central control room with simultaneous video recording of same being made to allow the jail staff to review all activity there.

I am one of the custodians of the records maintained by the Houston County Jail. A true and correct copy of the plaintiff's jail inmate file as maintained by the officers of the Houston County Jail

in the ordinary course of the Jail's day to day business is attached hereto as **Exhibit G**, and is incorporated herein by reference as if fully set forth.

Sheriff Lamar Glover is not actively involved in the day to day operations of the jail and was not directly or personally involved in the events allegedly giving rise to the plaintiff's claims in this case.

_____
KRISTIN E. ROCCO

STATE OF ALABAMA,

HOUSTON COUNTY.

Before me, the undersigned authority, personally appeared **Kristin E. Rocco**, who being sworn by me according to law, deposes and states that the matters and things alleged in the above Affidavit are true and correct to the best of her information, knowledge and belief.

Sworn to and subscribed before me on this the 30th day of June, 2006.

_____
NOTARY PUBLIC
My Commission Expires:   12-9-08